[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff from an assessment of damages by the defendant for the taking of a small portion of their property, together with certain easements and rights, as shown on a map entitled: "CITY OF HARTFORD MAP SHOWING LAND ACQUIRED FROM W-E ASSOCIATES BY THE STATE OF CONNECTICUT RECONSTRUCTION OF WALNUT STREET BRIDGE # 3781 SCALE 1" = 20' JUNE 1991 ROBERT W. GUBALA TRANSPORTATION CHIEF ENGINEER — BUREAU OF HIGHWAYS." A copy of the taking map, revised to October CT Page 2236 29, 1991, was introduced into evidence as Exhibit A. A description of the take appears in the complaint.
The parties stipulated that the date of the taking was July 15, 1992, and that damages as assessed by the defendant in the amount of $36,500 were deposited by the defendant with the clerk of the superior court.
The subject property is in the City of Hartford on the south side of Walnut Street near its intersection with Edwards Street to the west. It is in the B-2 Downtown Development Perimeter District zone on the edge of the central business district in a very old mixed business neighborhood. It is unimproved except for two billboards and a chain link fence. The southern boundary curves along railroad tracks owned by National Railroad Passenger Corp. It slopes downward from Walnut Street and is substantially level about twenty feet below street grade. The two appraisers called by the parties agreed that the highest and best use of the subject property both before and after the taking was for future commercial development.
The subject property was acquired by the plaintiff in 1985 along with two other properties, one at about the same time and the other about a year later, as a part of an assemblage. Some sort of commercial development was anticipated until certain activity by the Redevelopment Agency and then the economic downturn dictated postponement. The take has not affected any possible commercial development of the remaining land adversely. The subject property itself was acquired by a deed which conveyed four contiguous pieces on Walnut Street. The plaintiff's appraiser considered the four pieces together as one parcel containing 46,717 square feet. The defendant's appraiser considered the most easterly piece described in the deed as the subject property and testified that it contained 36,181 square feet. The take is in the northeast corner of the subject property on Walnut Street.
The take consisted of 0.015 of an acre which contains 653 square feet and was taken for the purpose of relocating and widening the sidewalk. Also taken was an easement to slope for the support of the highway over CT Page 2237 0.088 of an acre, an easement to install a metal beam rail and end anchorage over 64 linear feet, a right to install a sedimentation control system over 170 linear feet, and a right to reset one of the billboards. About 100 feet of chain link fence will be removed. Before the taking, there was a steep embankment running down from Walnut Street to where the subject property became substantially level. The defendant intends to add about six inches of turf and topsoil to the embankment and to extend it about six feet in a southerly direction into the subject property. The embankment was and will be necessary for the support of the roadway both before and after the taking. If the plaintiff were to construct a building on the subject property, it could not use the area of the slope easement unless it replaced it with some other structure such as a retaining wall. This would be so either before or after the taking.
The plaintiff called Peter R. Marsele, a qualified real estate appraiser, as an expert witness. He opined that the unencumbered land was not adversely affected by the taking, but that the area taken for the slope easement was of so little use to the plaintiff that its value was reduced by 90%. Marsele used the sales comparison approach to value. He used as comparable sales the sale of the subject property in 1985 to the plaintiff and the two sales of properties which the plaintiff purchased to complete his assemblage. He recognized that because they were an assemblage they were not true arms length sales. Because of the assemblage, Marsele did not use the adjusted per square foot value of the subject property alone. He added the per square foot values of the three properties and took an average in arriving at a per square foot value of $14.43 for the subject property. He concluded that the fair market value of the subject property before the date was $674,100. In his appraisal report, Marsele opined that the fair market value of the subject property after the take was $614,900, and he opined that damages were thus $59,200. In his testimony, Marsele said that a small wedge of land between the easterly side of the slope easement and the easterly property line, containing about 450 square feet, was affected in the same way as was the slope. If the 450 square feet are added to the slope easement for the purpose of computing value after the CT Page 2238 take, the after take value becomes $609,100 and the damages are computed as $75,000.
The defendant called Sowatei K. Lomotey, a qualified civil, engineer, as an expert witness. Lomotey described the project for reconstruction of Walnut Street in the area of the take and the need for the embankment for support of the roadway both before and after the take.
Richard H. Barry, a qualified real estate appraiser, was called by the defendant as an expert appraiser. He used the comparable sales method in arriving at his opinion of the fair market value of the subject property. He used three comparable sales and concluded after making his adjustments that the subject property had a fair market value before the take of $14.00 per square foot, a total of $506,534. He added $500 for the depreciated value of 100 feet of chain link fence to arrive at a total before take value of $507,000 rounded. He found that the slope was there before the take and that it would be the same after the take except that it would be slightly higher. He opined that developability of the property was the same before and after the take except for the slight change in the slope. Because he found no easement on record, he concluded that technically the property was encumbered by the slope easement. He concluded that the area of the slope easement was reduced in value by 50%. He opined that the fair market value of the property after the take was $470,500 and that damages amounted to $36,500.
The duty of a referee in an appeal from an award of damages for the acquisition of property by eminent domain is to reach his own conclusion of value by weighing the opinions of the appraisers and the claims of the parties in the light of all the evidence and the circumstances bearing on value and his own knowledge of the elements affecting value.
After having seen the property, and having given due consideration to the testimony of all the witnesses and to all of the evidence, and relying on my own knowledge of the elements establishing value, I have concluded that the damages sustained by the plaintiffs CT Page 2239 were $47,972. Judgment may enter for the plaintiff for the further sum of $11,472 in addition to the sum of $36,500 which was deposited by the defendant, with interest on said further sum of $11,472 from the date of taking to the date of payment, together with costs and an allowance of $800 towards its appraisal fee.
George D. Stoughton State Trial Referee CT Page 2240
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 2241
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 2242
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 2243
[EDITORS' NOTE: THIS PAGE IS BLANK.] CT Page 2244